# In the District Court of the United States
# For the District of South Carolina
## BEAUFORT DIVISION

|  |  |
|---|---|
| Dwight Carelock, #263203, | Civil Action No. 9:05-2913-HFF-GCK |
| Petitioner, |  |
| vs. | **REPORT AND RECOMMENDATION** |
| State of South Carolina and Henry McMaster, Attorney General of South Carolina, | **OF THE MAGISTRATE JUDGE** |
| Respondents. |  |

## I. INTRODUCTION

The Petitioner, Dwight Carelock ("Petitioner" or "Carelock"), a state prisoner proceeding without the assistance of counsel, seeks *habeas corpus* relief under Title 28, United States Code, Section 2254. By definition, the relief which he seeks must be based upon a finding that he is being illegally detained in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c), D.S.C., this United States Magistrate Judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## II. *PRO SE* PETITION

Carelock is presently incarcerated in the McCormick Correctional Institution ("MCI") of the South Carolina Department of Corrections ("SCDC"). Carelock filed this Petition for a writ of *habeas corpus* (the "Petition") on October 10, 2005 against State of South Carolina and Henry McMaster, the Attorney General of the State of South Carolina.[1] [1-1]. Carelock is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519

---

[1] Carelock has the benefit of the holding in Houston v. Lack, 487 U.S. 266 (1988) with respect to the "delivery" date of October 10, 2005.

(1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214, codified at 28 U.S.C. § 2254. This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).

### III. PROCEDURAL HISTORY IN STATE COURT

#### A. Proceedings in the Court of General Sessions

During the July, 1999 term of the Court of General Sessions for Chesterfield County, the grand jury returned indictments against Petitioner for possession of a firearm by convicted felon (one convicted of a crime of violence); assault with intent to kill; and assault and battery with intent to kill. (App. pp. 727-732). He was represented by Patricia Rivers, Esquire. On December 6-9, 1999, a jury trial was held before the Honorable Paul M. Burch. During the

course of the trial, Judge Burch directed a verdict of acquittal on the firearm charge. The jury found Carelock guilty of the two assault charges and Judge Burch sentenced him to twenty years confinement for assault and battery with intent to kill and ten years, consecutive, for assault with intent to kill.

Petitioner timely appealed his conviction and an appeal was perfected on his behalf by Daniel T. Stacey, Esquire, Chief Attorney of the South Carolina Office of Appellate Defense. On March 15, 2001, Mr. Stacey submitted a Petition to be Relieved as Counsel as well as a Final *Anders* Brief of Appellant[2] to the South Carolina Court of Appeals in which the following issues were presented for review:

1. Whether the court had subject matter jurisdiction to convict appellant of assault with intent to kill where the indictment failed to allege the essential element of malice aforethought?

2. Whether the court erred when it failed to grant appellant's directed verdict motion on both charges, because the evidence was insufficient to convince a rational trier of fact beyond a reasonable doubt that appellant aided and abetted his brother in the drive-by shootings involved here? (App. p. 600).

The State filed and served its final brief in response on March 5, 2001. (App. pp. 612-627). On April 9, 2002, the South Carolina Court of Appeals issued an unpublished opinion which held that the indictment for assault with intent to kill was invalid, and thus deprived the circuit court of subject matter jurisdiction. The Court of Appeals vacated the conviction for assault with intent to kill, but affirmed the conviction of assault and battery with intent to kill. (App. pp. 629-636). Petitioner did not seek certiorari review from the South Carolina Supreme Court and the South Carolina Court of Appeals issued the remittitur on April 26, 2002. [7-2]

### B. Carelock's Application for Post-Conviction Relief

The Petitioner timely filed an application for post-conviction relief ("PCR") on April 30, 2002, in which he raised the following grounds for relief:

---

[2] *See* Anders v. California, 387 U.S. 738 (1967).

9(a)    Ineffective Assistance of Counsel.

9(b)    Prosecutorial Misconduct. (App. p. 638).

The State made its return on August 23, 2002. (App. pp. 647-650). Burnie W. Ballard, Esquire, represented Petitioner in his PCR action. PCR counsel filed an amendment and supplement to the PCR application on February 7, 2003, which set forth three claims of ineffective assistance of counsel:

> 1. That trial counsel failed to object to the Court's admonition to the jury that they were not to take phone calls in case it was someone "asking for a favor or threatening you (the jury) in any kind of way";
>
> 2. That trial counsel failed to object to the testimony of Officer Clarence Francis (at page 420, transcript) regarding witnesses being unwilling to make or give statements because they were "scared of reprisals". This statement constitutes hearsay and further, there is nothing in the record to establish that the defendant Carelock, the applicant herein, was connected to, or associated with, any threats, or danger of reprisals.
>
> 3. That trial counsel failed to request a jury charge that "mere presence" at the scene of an offense would be insufficient to convict the defendant. (App. 653-654).

An evidentiary hearing was held on the matter on May 19, 2003, before the Honorable J. Michael Baxley. (App. p. 656-721). Testimony was taken from Petitioner and from his attorney, Ms. Rivers, and the trial transcript and statements from Petitioner were made a part of the PCR record. The court also heard testimony about a fourth issue, relating to whether Petitioner was prevented from taking the stand at his trial. Ms. Rivers admitted that she had erred by not requesting a jury charge on the issue of "mere presence". (App. pp. 704-705). At the conclusion of the hearing, Judge Baxley denied relief, holding in part that a fair reading of the trial judge's charges to the jury as a whole did address the "mere presence"is issue, and further, that there was no proof that giving the "mere presence" charge would have changed the outcome of the proceedings. Judge Baxley issued a written order of dismissal on July 1, 2003. (App. 722-726).

### C. Petitioner's Appeal to South Carolina Supreme Court

Petitioner appealed the denial of relief, and on January 15, 2004, Assistant Appellate Defender Aileen P. Clare submitted a Petition for Writ of Certiorari in which the following issues were raised:

1.  Was trial counsel ineffective for failing to object to improper comments by the solicitor and court?

2.  Was trial counsel ineffective for failing to request a jury charge on mere presence? [7-3]

The state filed its return on March 31, 2004. [7-4] The South Carolina Supreme Court denied the petition on December 1, 2004 and the Remittitur was issued on December 17, 2004. [7-5; 7-6]

## IV. FEDERAL COURT HISTORY

### A. Carelock's Petition for a Writ of Habeas Corpus

On October 10, 2005, Carelock filed his Petition for a writ of habeas corpus. [1-1] The Petition set forth four (4) grounds for relief:

Ground One:   The court failed to grant [a] directed verdict on both charges, the evidence was insufficient, that defendant aided and abetted his brother.

Ground Two:   Was trial counsel ineffective for failing to object to improper comments by the solicitor and court.

Ground Three: Trial counsel was ineffective for failing to request a jury charge on mere presence.

Ground Four:  Trial counsel was ineffective for not object[ing] to hearsay testimony by officer Clarence Francis, which prejudiced the Petitioner.

On October 19, 2005, the undersigned issued an Order which authorized service on the State of South Carolina and Henry McMaster (collectively, the "Respondents"), and notified Carelock of the change of address rule. [4/5-1] Thereafter, in response to Carelock's Petition for *habeas corpus* relief, the Respondents timely filed a Motion for Summary Judgment and a Return and Memorandum of Law in Support of Motion for Summary Judgment (the "Motion for Summary Judgment") on December 8, 2005. [7-1; 8-1]



Page 5 of 20

The undersigned issued an Order on December 13, 2005, under *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Carelock of the summary judgment dismissal procedure and the possible consequences if he failed to respond adequately to the Motion for Summary Judgment.³ [10-1] On January 17, 2006, Carelock filed his Response in Opposition to the Motion for Summary Judgment. [11-1]

### B. The Standard for Determining a Motion for Summary Judgment

The standard of review for determining a motion for summary judgment was articulated in the recent case of *Al-Marri v. Hanft*, 378 F.Supp. 2d 673, 675-76 (D.S.C. 2005). Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forth with if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears this initial burden of informing the Court of the basis for its motions, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962).



"Once the moving party carries its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The adverse party must show more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. If an adverse party completely fails to make an offer of proof

---

³ The explanation to the *pro se* litigant is required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which was a civil rights case. The same procedure has been held to apply in federal habeas corpus cases under *Webb v. Garrison*, No. 77-1855 (4th Cir., decided July 6, 1977).

concerning an essential element of that party's case on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322-23. Hence, the granting of summary judgment involves a three-tier analysis. First, the Court determines whether a genuine issue actually exists so as to necessitate a trial. Fed. R. Civ. P. 56(e). An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Second, the Court must ascertain whether that genuine issue pertains to material facts. Fed. R. Civ. P. 56(e). The substantial law of the case identifies the material facts, that is, those facts that potentially affect the outcome of the suit. *Anderson*, 477 U.S. at 248. Third, assuming no genuine issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law. Fed.R.Civ.P. 56(e).

### C. Habeas Corpus Review

#### 1. Application of the Antiterrorism and Effective Death Penalty Act

The delivery date of the Petition is October 10, 2005. Accordingly, the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") apply to this case. *Lindh v. Murphy*, 521 U.S. 320 (1997).

#### 2. Exhaustion of State Court Remedies



Relief under Section 2254 may be had only after a habeas petitioner has exhausted his state court remedies: "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas. Claims not so raised are considered defaulted." *Breard v. Green*, 523 U.S. 371, 375 (1998), citing *Wainwright v. Sykes*, 433 U.S. 72 (1977); *see also* 28 U.S.C. § 2254(b). This Court's exhaustion requirements under Section 2254 are fully set forth in *Matthews v. Evatt*, 105 F.3d 907 (4th Cir.), *cert. denied*, 522 U.S. 833 (1997):

> In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a § 2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims. Thus, a federal

> habeas court may consider only those issues which have been "fairly presented" to the state courts[.]
>
> To satisfy the exhaustion requirement, a habeas petition must fairly present his claim to the state's highest court. The burden of proving that a claim has been exhausted lies with the petitioner.
>
> The exhaustion requirement, though not jurisdictional, is strictly enforced[.] [4]

In order to exhaust his claims in state court, a South Carolina petitioner must file an application for relief under the South Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10–160 (the "Act"). The applicant may allege constitutional violations in a PCR proceeding, but only if the issue could not have been raised by direct appeal. *Gibson v. State*, 329 S.C. 37, 41, 495 S.E.2d 426, 428 (1998), *citing* S.C. Code Ann. §§ 17-27-20(a)(1), (b). "Exhaustion includes filing of an application, the rendering of an order adjudicating the issues, and petitioning for, or knowingly waiving, appellate review." *Gibson v. State*, 329 S.C. at 42, 495 S.E.2d at 428. As the South Carolina Supreme Court has explained: "[W]hen the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies. *In Re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 321 S.C. 563, 564, 471 S.E.2d 454, 454 (1990).



Just as the exhaustion doctrine requires that a claim be fairly presented to all appropriate state courts before it is raised in a Section 2254 petition, if a claim has not been presented but no state remedy remains available, the claim will be considered procedurally defaulted. *Teague v. Lane*, 489 U.S. 288 (1989). A claim that has been procedurally defaulted in state court usually will not be reviewed in a Section 2254 petition. A federal court will hear a procedurally defaulted claim only if the petitioner "'can demonstrate <u>cause</u> for the default <u>and actual prejudice</u> as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice.'" *Matthews v. Evatt*, 105 F.3d at 916,

---

[4]   Matthews v. Evatt, 105 F.3d at 910-11 (citations omitted).

*quoting Coleman v. Thompson*, 501 U.S. at 750 (emphasis supplied by the undersigned). Unless a petitioner can demonstrate both "cause" and "prejudice", this Court will be procedurally barred from considering those claims that are procedurally defaulted. *Daniels v. Lee*, 316 F.3d 477, 486 (4th Cir. 2003).

Respondents concede that the Petitioner has exhausted his state remedies with the disposition of his direct appeal and his PCR appeal to the South Carolina Supreme Court. *See generally*, S.C. Code Ann. § 17-27-100 (1985); *Drayton v. Evatt*, 312 S.C. 4, 430 S.E.2d 517 (1993); Rule 203, SCACR. Accordingly, this Petition is not subject to dismissal in order to continue the pursuit of available state remedies as there are none.

### 3. Scope of Review

This Court's review of collateral attacks on state criminal convictions is governed by the parameters set forth in the AEDPA, which amended Section 2254. Under the AEDPA, a federal court may only grant habeas corpus relief under Section 2254(d) with respect to a claim adjudicated on its merits in a state court proceeding if that state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Frazer v. South Carolina*, 430 F.3d 696, 703 (4th Cir. 2003), *quoting* 28 U.S.C. § 2254(d) *and citing Williams v. Taylor*, 529 U.S. 362, 402-413 (2000) (discussing 2254(d).



With respect to the first prong of the analysis, the United States Supreme Court has explained that a state court adjudication is "contrary to" clearly established Federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). An "unreasonable application" of Federal law will be found "if the state court identifies the correct

governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 412-413. An "unreasonable application" likewise will be found if the state court "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled. *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000) (opinion of Kennedy, J.). Yet as *Williams* teaches, a state court's "unreasonable application" of the law informs the federal court to the extent that the latter "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Bates v. Lee*, 308 F.3d 411, 417 (4th Cir. 2002), *cert. denied*, 538 U.S. 1061 (2003), *quoting Williams*, 529 U.S. at 411. The Fourth Circuit has held that this application of federal law must be "objectively unreasonable." *Oken v. Corcoran*, 220 F.3d 259, 264 (4th Cir. 2000) (noting that the Supreme Court in *Williams* "adopted" the holding in *Green v. French*, 143 F.3d 865, 870 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999) that the "unreasonable application" inquiry is an objective inquiry.).

Turning to Section 2254(d)(2), the proper analysis for establishing whether there exists an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding" is framed by Section 2254(e)(1), which provides that the findings of fact by a state court are entitled to a "presumption of correctness" and the petitioner must bear the burden of rebutting that presumption by "clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1). The federal courts must accord "considerable deference in their review of state habeas proceedings." *Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005), *citing (Terry) Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Thus, even if an error were identified in the record, "the habeas petitioner will be entitled to relief only if the habeas court is 'in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict.'" *Jones v. Polk*, 401 F.3d 257, 265 (4th Cir. 2005), *quoting O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation marks and citation omitted).

As *Jones* explains, "[t]he proper inquiry is not 'merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.'" *Jones*, 401 F.3d at 265, *quoting Kotteakos v. United States*, 328 U.S. 750, 765 (1946).

When Congress crafted this deferential standard of review in the AEDPA, it was at least partially motivated "to limit federal intrusion into state criminal adjudications." *(Michael) Williams v. Taylor*, 529 U.S. 420, 436 (2000). As Judge Wilkinson observed in *Lovitt*, "[i]t is, after all, the job of state courts to faithfully apply federal law. U.S. Const., Art. VI, cl. 2. Their efforts in this regard are to be respected as the acts of sovereign entities, whose sworn allegiance to the Constitution and the laws of the United States is as solemn as our own." *Lovitt*, 403 F.3d at 178. Mindful of the deference this federal court owes to South Carolina courts, Petitioner's claims will be addressed in the order he presents them.

### Ground One:

**The court failed to grant [a] directed verdict on both charges, the evidence was insufficient, that defendant aided and abetted his brother.**

This claim was rased on direct appeal and addressed by the South Carolina Court of Appeals. (App. pp. 634-636). Therefore, it is preserved for review by this court. *Matthews v. Evatt*, 105 F.3d at 911. However, the claim fails to allege any violation of federal law. Therefore, Petitioner has failed to state a claim upon which relief may be granted in this Section 2254 action. *See* 28 U.S.C. § 2254(d) (habeas relief is premised on error of federal law). To the extent the issue may be interpreted as one of due process, as it challenges the sufficiency of the evidence, the proper question pursuant to clearly established Supreme Court precedent is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

In the present case, there is more than sufficient evidence in the record to rebut any type of argument based upon a due process challenge. First, the shooting victim, Ray Blakeney,

Page 11 of 20

positively identified both Petitioner and his brother, Aaron Carelock, as being involved in the shooting. (App. p. 181, lines 19-24). Ray testified that about one week before the shooting, he and Aaron (Petitioner's brother) had a fight in Pop's Gameroom, and Aaron threatened to kill him. (App. p. 183, line 9–187, line 4). Ray testified that just before the shooting in front of Pop's Gameroom, Petitioner and Aaron had driven up in Aaron's car, and Petitioner and Aaron opened their respective car doors and sat watching Ray and his friend. When testified that when he left the store, the brothers followed in Aaron's car; when Ray stopped to talk to Alvin Phillips and someone in Aaron's car shot Alvin Phillips and shot at Ray. (App. p. 179, line 13–p. 181, line 24; p. 252, line 7–255, line 22).

Another witness, Michael Funderburk, a friend of the Carelock brothers, testified that soon after the shooting, Aaron called him and told him to check on the police activity around the area of Pop's Game room. Michael did so, and then met Aaron at Linda Moser's house, as agreed upon during the phone call. Aaron told Michael he had shot somebody and he had intended to shoot Ray Blakeney and Leonard Huntley because Blakeney had hit him. Petitioner entered the Moser home a few minutes later and told Michael that he (Petitioner) had shot the wrong person, as Petitioner had learned that Alvin Phillips had been shot. Michael also testified that both Aaron and Petitioner took credit for the shooting (App. p. 345, line 11–p. 350, line 25) and Aaron showed him a gun (a .38) and asked Michael to keep it for him. (App. p. 351, line 11-p. 356, line 11; p. 360, lines 5-23). The gun was recovered by law enforcement officers and testing confirmed that the gun fired the bullets that wounded Alvin Phillips. (App. p. 275, lines 16-21; p. 282, lines 14-25).

Petitioner was arrested, advised of his rights, and then gave a statement that he was in Aaron's car on the passenger side when the shooting occurred. He gave a second statement that he knew the gun Aaron used "was an old .38 black revolver." (App. p.425, line 5--p. 428, line 18).

Law enforcement tested Petitioner and Aaron for gunshot residue. The results indicated that Petitioner was less likely to have fired a weapon, but the results did not conclusively exclude the possibility that he had fired a weapon. (App. p. 215, line 6–p. 216, line 4).

In sum, the evidence did not specifically exclude Petitioner as the actual shooter (especially in light of the gunshot residue testing, Petitioner's own statement to his friend, Michael, claiming responsibility, and Petitioner's statement to law enforcement which not only conceded knowledge oh the gun but gave a fairly detailed description of the gun used). Nevertheless, under state law, "one who joins with another to accomplish an illegal purpose is liable criminally for everything done by his confederate incidental to the execution of the common design and purpose." *State v. Langley,* 334 S.C. 643, 648, 515 S.E.2d 98, 101 (1999). The facts in the record demonstrate a concerted effort to act together at the time of the shooting. In fact, Petitioner conceded at the PCR hearing that the record contained evidence of same. (App. p. 684, lines 12-18). Therefore, there is evidence in the record that reasonably supports guilt beyond a reasonable doubt, and there is no due process violation. Therefore, this issue should be dismissed.

## Grounds Two, Three, and Four

### (Allegations of Ineffective Assistance of Counsel)

Ground Two: Was trial counsel ineffective for failing to object to improper comments by the solicitor and court.

Ground Three: Trial counsel was ineffective for failing to request a jury charge on mere presence.

Ground Four: Trial counsel was ineffective for not object[ing] to hearsay testimony by officer Clarence Francis, which prejudiced the Petitioner.

As Petitioner's remaining three grounds for habeas corpus relief focus on his allegations of ineffective assistance of counsel, it is appropriate at the outset to articulate the standard employed to review such claims. The U.S. Supreme Court has set forth a two-part test to determine whether a convicted defendant is entitled to relief based upon ineffective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668 (1984). First, a defendant must first show that

counsel's performance fell below an objective standard of reasonableness. *Id.* In making this determination:

> [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound strategy.' . . . There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. *Id.* at 689.

Thus, the reviewing court must be deferential to counsel and not second-guess counsel's acts or omissions after an adverse result, which may easily lend itself to a finding that counsel's assistance was unreasonable based upon the fact of the adverse result. *Id.*

Even if a defendant can show deficient performance by his trial attorney, he must also prove that he was prejudiced by counsel's performance. To establish prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is probability sufficient to undermine confidence in the outcome." *Id.* It is insufficient to show only that the errors had some conceivable effect on the outcome of the proceeding, because virtually every act or omission of counsel would meet that test. *Id.* at 693. The defendant bears a "'highly demanding' and 'heavy burden' in establishing actual prejudice." *Williams v. Taylor*, 529 U.S. 362, 394 (2000). With these principles in mind, the court will address Petitioner's allegations of error.

### Ground Two:

> Was trial counsel ineffective for failing to object to improper comments by the solicitor and court.

This ground for relief is based upon statements made by the Solicitor with to the effect that threats allegedly had been made against two witnesses. *See* [1-1] at pp 7-8. This claim had been raised in the PCR action, and in the appeal from denial of relief. (App. pp. 653 and 724, Cert. Pet. at pp. 3-5). Therefore, it is preserved for review in this action. *Matthews, supra.*

In order to be entitled to relief, Petitioner must show that the state court incorrectly applied federal law to his ineffective assistance of counsel claim. In other words, Petitioner must show, contrary to the PCR judge's findings, that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1985). Petitioner bears the burden of establishing actual prejudice. *Williams v. Taylor*, 529 U.S. 362, 394 (2000). Moreover, as stated above, the state court findings are presumed to be correct. *See* 28 U.S.C. § 2254(d)(1).

The PCR Judge applied the correct standard of error and prejudice as evidenced by his specific reference to those issues in his order denying relief. (App. p. 724). Therefore, the only question before this court is whether there was an unreasonable determination of fact. *See* 28 U.S.C. § 2254(d). The record fully supports the Judge's determination of facts, and shows a reasonable application of *Strickland*. The PCR Judge referred to counsel's testimony at the PCR hearing "[r]egarding the testimony and courtroom admonitions and noted that Petitioner's counsel, Ms. Rivers, testified "that her client was not mentioned in any way [in connection with the threats], and therefore, she saw no need to object." (App. p. 724; *see also* App. p. 694). In denying relief, the PCR Judge found that Petitioner "was never mentioned in any of the comments" regarding possible threats and concluded that Petitioner failed to show deficient performance or "any reasonable likelihood of a different result but br the alleged errors." (App. p. 725; *see also* App. p. 717). Moreover, the PCR Judge, in his review of the record before ruling, noted that the possibility of threats was mentioned briefly to the jury, but the other references were made only to the judge. (App. p.717)

The trial judge instructed the jury as follows:

> We're going to stop for the evening. I'm going to let you go home for the evening. Do not discuss this case with anyone. Don't even discuss it with any family members. Because somebody could say something to you that would improperly influence you.

> My suggestion during the progress of this trial would be while you're at home, do not even take any phone calls from anyone. If you have other family members there at the house, let them handle all phone calls in case somebody might be tempted to try to call you and attempt to contact you, whether it be to discuss the case or whether it be asking for a favor or threatening you in any kind of way.
>
> My general advice to you is if you have a family member, let them handle the phone calls, and that will give a little insulation from something like that happening. Very seldom does something like that happen, but it doesn't hurt to be on guard.
>
> Should somebody try to approach you in any way concerning this case, do not discuss this case with them. Immediately contact the court. Contact me if it's during court hours. Should it happen at home, contact your local law enforcement, whether it be the city police department or the sheriff's department, and we will get to work on it immediately. (App. p. 92, line 6--p. 93, line 4).

These instructions clearly support counsel's assertion that Petitioner was not connected to the threats. Moreover, the trial judge's statement, in context, appears to be nothing more than a standard admonition to abstain from all communications, whether friendly or not. Prejudice cannot possibly be shown. The PCR Judge's decision reflects a reasonable application of the *Strickland* standard based upon facts supported by testimony from the PCR hearing and from the record. Therefore, Petitioner should not be entitled to relief on this issue.

### Ground Three

Trial counsel was ineffective for failing to request a jury charge on mere presence;



This claim was raised in the PCR action, and in the appeal from denial of relief (App. pp. 653 and 725; Cert. Pet. pp. 6-7). Therefore, it is preserved for review in this action. *Matthews, supra*. As with the previous issue, in order to obtain relief, Petitioner must show an unreasonable application of the *Strickland* standard.

The PCR Judge found that Petitioner's counsel erred in failing to request the charge, and noted counsel's confession of error at the PCR hearing. (App. p. 718). However, he also found that the trial judge's charge essentially contained the "mere presence" charge; the trial judge charged the jury with respect to the state's burden of proof and further charged that "one cannot be convicted on suspicion, however strong that suspicion may be." (App. p. 719; *see also* App. p. 573, lines 20-21. The trial judge also charged that "criminal intent is a necessary element of

Page 16 of 20

each crime, and that must be proved by the state beyond a reasonable doubt," and that such "intent is a state of mind which operates jointly with an act in the commission of a crime" (App. p. 578, line 21–p. 579, line 8); and finally, "[if a crime is committed by two or more persons who are acting together in the commission of that offense, the act of one is the act of all" along with "[i]f two or more people are acting together assisting each other in the commission of an offense, the law says that under these circumstances the act of one is the act of all." (App. p. 581, lines 4-15).

The PCR judge found, in light of the charge as a whole, that there was no reasonable probability the result would have been different had the charge been requested and given. (App. p. 719 and 725). The PCR Judge's decision reflects a reasonable application of the *Strickland* standard with respect to facts supported by the testimony from the PCR hearing and from the record. Therefore, Petitioner is not entitled to relief on this ground..

### Ground Four

> Trial counsel was ineffective for not object[ing] to hearsay testimony by officer Clarence Francis, which prejudiced the Petitioner.

This issue, though raised in the PCR action (App. p. 653), was not raised to the State Supreme Court in the appeal from denial of relief and consequently is not preserved for review in this action. *Matthews, supra; see also Longworth v. Ozmint*, 377 F. 3d 437, 447-448 (4th Cir. 2004) (issues will be considered "procedurally defaulted as a result of [petitioner's] failure to raise them in his petition for certiorari to the South Carolina Supreme Court for review of the State PCR Court's decision.").[5]

---

[5] In *Gibson v. State*, 329 S.C. 37, 42, 495 S.E.2d 426, 428 (1998), the South Carolina Supreme Court held that exhaustion of state PCR remedies requires "filing of an application, the rendering of an order adjudicating" the issues, and petitioning for, or knowingly waiving, appellate review. Of course, as Respondents correctly argue, Gibson is distinguishable from *State v. McKennedy*, 348 S.C. 270, 275, 559 S.E.2d, 853 850 (2002), in which the South Carolina Supreme Court held that discretionary review by the state's highest court to be outside the state's ordinary appellate procedure. *McKennedy* relies upon the language from In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief, 321 S.C. 563, 471 S.E.2d 454 (1990) which explains that "a litigant shall not be required to petition for rehearing and certiorari *following an adverse decision of the Court of Appeals* in order to be

In order to overcome this bar, Petitioner must show both cause and prejudice or actual innocence. *George v. Angelone*, 100 F.3d 353, 363, 4th Cir. 1996). In the present case, there is no apparent cause for the default. Petitioner had the assistance of counsel and availed himself of the appeal process; however, the instant allegation simply was not included. Moreover, the claim of factual innocence is not available to the Petitioner, because the record in this case reveals that Petitioner was identified at the scene, with the shooter, threatening the victim immediately before the shooting, and claiming responsibility for the shooting shortly thereafter. A claim of factual innocence would be incredible under these circumstances. Accordingly, this issue is without merit.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the Respondents' Motion for Summary Judgment **[8-1] should be granted**.

George C. Kosko
United States Magistrate Judge

March 29, 2006
Charleston, South Carolina

---

deemed to have exhausted all available state remedies respecting a claim of error." (emphasis added). At the time of his PCR appeal, Petitioner's only appellate remedy was to petition for review by the Supreme Court of South Carolina. Therefore, pursuant to *Gibson*, seeking discretionary review was part of the proper exhaustion of state PCR remedies. Furthermore, in the present case, Petitioner actually pursued an appeal and failed to raise this issue. Thus, he evidenced a specific intent to abandon this issue. Under these facts, the issue could be procedurally defaulted.

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, 1992 U.S.Dist. LEXIS® 6243 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the period for filing objections, **but not thereafter**, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** See Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial**

> resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins, *supra*; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402
